## LOUISA A. GEORGE v. WILLIAM T. STEVENS.

The 2d and 3d sections of the act of 13th March, 1848, "the better to define marital rights," were thus quoted: The statute (Paschal's Dig., Art. 4641) provides that "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands or slaves thus acquired, shall be the separate property of the wife: *Provided*, That during the marriage the husband shall have the sole management of all such property." Article 4643 provides that "The husband and wife may be jointly sued for all debts contracted by the wife for necessaries furnished herself or children, and for all the expenses which may have been incurred by the wife for the benefit of her separate property." These two articles furnish ample solution for

the question proposed. When the statute declares that the wife's property shall remain her separate property, it certainly does not destroy one of the great characteristics of property—its vendible quality—or the right of the wife to acquire other property upon the credit of property owned and possessed. And when the husband, or supposed husband, as in this case, united with her in the execution of a note for the purchase of property, this act was full, ample, and complete proof of the consent required in his "management of the property."

APPEAL from Wharton. The case was tried before Hon. BENJAMIN SHROPSHIRE, one of the district judges.

Louisa E. Petty was a well-to-do widow in Wharton county, Texas, when there came along a fellow by the name of C. F. Whittington, with whom, about 1855, she formed a second marriage. Whittington brought nothing into the concern, except some old debts which followed him. "They lived pretty well up to their means" for some five years, during which time Whittington purchased a horse and buggy, and over one hundred head of cattle, and THEY purchased four negroes. The one for which the note in controversy was given was purchased entirely on a credit, at the price of $1,600. For him the parties gave their joint note, and took from the payee a joint bill of sale for the slave. Before the maturity of the note a rumor got abroad that Whittington had another wife living when he married Mrs. Petty. Whittington scampered away, saying he was going for proofs that he had no such first wife, but he returned no more; and Mrs. Whittington, believing the story, soon afterwards resumed the name of her first husband, and on the 26th October, 1863, she married Ezekiel George. By marriage contract with George, she described the negro for whom the note was given as her separate property, of which, as well as George, she had a great abundance. As she refused to pay, the plaintiff sued on the note.

The defendant, Mrs. Louisa A. Petty Whittington George, pleaded her marriage and coverture with Whittington as a reason why she was not liable on the note. Mr. *Quinan*,

for the plaintiff, and *Harris*, for the defendant, spun out the pleadings to immense length. The salient points were, that the defendant set up her coverture and the joint form of the bill of sale as reasons why her separate estate was not liable for the debt; and she also pleaded that Whittington had paid a sixth of the note, for which she claimed a credit. To this the plaintiff replied, that she was never lawfully married to Whittington, and that when the note was given she was a *feme sole;* that she kept and worked the negro and all other effects of Whittington after he decamped; that she inventoried the slave as part of her separate estate when she married George; and that she had acknowledged the debt after her separation from Whittington.

The instructions presented the same issues as the pleadings; that is, that the liability of the defendant depended upon the validity of the marriage with George, and upon her acknowledgments of that liability. About the disability of Whittington to marry there was no proof, except the rumor of his former marriage and his disappearance to find evidence to the contrary, and the action of the defendant upon these facts, which satisfied her of her right to try a third marriage.

The jury found the amount of the note against the defendant, for which there was a motion for a new trial overruled, and the defendant appealed.

*John W. Harris,* for appellant.—The separate property of the wife cannot be charged on an account made or note executed by her jointly with her husband, even for necessaries purchased for her husband or members of the family other than herself or children. (Hutchinson v. Underwood, 27 Tex., 255; Brown v. Ector, 19 Tex., 346.) It is the policy of our law to protect the *corpus* of the wife's separate property from being squandered. (Magee v. White, 23 Tex., 192.)

In the construction of contracts the intention of the parties must be taken into consideration. It is evident from the bill of sale that it was not intended that this negro should become the separate property of appellant, for the conveyance was to C. F. Whittington and his wife, Mrs. Whittington. (Story on Contracts, § 410.)

*George Quinan,* for appellee. — The defendant claimed the slave as her separate property after the dissolution of her supposed coverture, and her acknowledgment that she owed the note given for him dispenses with the necessity of inquiry into the propriety of the purchase. She cannot, while she admits the debt, be permitted to assert that the purchase was improvident. She cannot refuse to pay, yet retain the property, appropriate it to her own use, and make it available for her advancement in marriage. The bill of sale is explained by her circumstances and acts, and shows that she made and treated the property as her separate estate. (Butler v. Robinson, 11 Tex., 142; Crosby v. Huston, 21 Tex., 231.

MORRILL, C. J.—When the congress of the Republic of Texas, through the influence of a disciple of Coke, passed. an act introducing the common law of England to be the rule of decision of the republic, it was fortunate for the female branch of the human family that there were in that legislative assembly those who were unwilling that wives should occupy the station assigned them by the common law of England. So discordant is the common law of England with the statutes declaring marital rights—so utterly inconsistent is that law, which merges the political and judicial existence of a woman in her husband on marriage, with the laws that concede to a wife her separate rights of property and person, and a standing in the judicial tribunals to sue for and defend them—that a system of jurisprudence based upon a mixture of these incongruities.

cannot be otherwise than discrepant and incongruous. A verification of these remarks may be found in the reports of this state.

The question for adjudication, stripped of all superfluity, is simply whether a woman who, with a supposed husband, but in reality not her husband, made a note in consideration of a slave purchased by her, is liable to pay the note.

The statute [Paschal's Dig., Art. 4641] provides, that "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands or slaves thus acquired, shall be the separate property of the wife: *Provided*, That during the marriage the husband shall have the sole management of all such property."

Article 4643 provides, that "The husband and wife may be jointly sued for all debts contracted by the wife for necessaries furnished herself or children, and for all the expenses which may have been incurred by the wife for the benefit of her separate property."

These two articles furnish ample solution for the question proposed.

When the statute declares that the wife's property shall remain her separate property, it certainly does not destroy one of the great characteristics of property—its vendible quality—or the right of the wife to acquire other property upon the credit of property owned and possessed. And when the husband, or supposed husband, as in this case, united with her in the execution of a note for the purchase of property, this act was full, ample, and complete proof of the consent required in his "management of the property."

It was for them to decide whether the property purchased was necessary for herself when they made the purchase; and, having contracted the debt for this purpose, they may be jointly sued on it.

We see no reason why the wife, with the consent of her husband, may not enter into any contract or speculation, based upon her property, or why, when having thus done, she should not be required to comply with the requirements of her contracts.

There is no error in the judgment, and it is

AFFIRMED.